WIGGINTON, Judge.
We have for consideration a question of law certified by the Circuit Court of the Seventh Judicial Circuit for St. Johns County which is determinative of this cause now pending in that court and is without controlling precedent in this state. We accept the certificate and entertain jurisdiction as provided by Rule 4.6, Florida Appellate Rules, 32 F.S.A.[1]
The facts underlying the question posed for decision are stipulated and are not in dispute. Defendant, Founders Investment Corporation, a financing agency, floor planned the inventory of one Glover, a retail dealer in mobile homes. As a part of this transaction, Founders took from Glover and filed with the Secretary of State of Florida a financing statement evidencing its security interest in the inventory of mobile homes owned by Glover, including all inventory which might thereafter be acquired.
At a later date plaintiff Taylor Mobile Homes, a corporation engaged in the manufacture of mobile homes, delivered to Glover at his place of business four newly manufactured mobile homes for the purpose of display and retail sale. Certificates of title to these four new units were never issued, nor were statements of origin, documents of consignment, or any other contracts executed or exchanged between Taylor and Glover in connection with their ar-rangments for the display and sale of these units. Glover paid no consideration at the time he accepted delivery of the units from Taylor, or at any time thereafter. At no time either before or after delivering possession of the units to Glover did Taylor serve on Founders a written notice of claim to a purchase money security interest in the units as provided by F.S. Section 679.9-312, F.S.A.
Thereafter Glover defaulted in his financial obligations to Founders, as a result of which the latter instituted an action to enforce its security interest under the financing plan between it and Glover. Ancillary to its suit, Founders attached Glover's entire inventory of mobile homes including the four new units delivered to Glover by Taylor. Taylor made demand upon Founders for release to it of the four units in question, and upon Founders’ refusal this replevin action was instituted. In light of the facts above related, the following question is certified for our decision:
“QUESTION
“Do the facts that:
“(a) Chapter 319, F.S., relating to title certificates of motor vehicles, including mobile homes, was not repealed by the Florida Uniform Commercial Code;
“(b) Founders filed its security interest covering inventory of new, never titled mobile homes with the Office of the Secretary of State; and
“(c) No notice was given by Taylor to Founders under Section 679.9-312, F.S.;
“entitle Founders to the enforcement of its judgment against the four (4) new mobile homes, or does Taylor have a right to recover possession thereof ? ”
The Uniform Commercial Code, F.S. Chapter 679, F.S.A., provides that a creditor’s security interest in goods comprising the inventory of a debtor may be perfected by taking from the debtor a financing statement evidencing such interest and filing it *118 with the proper filing officer. Such financing plan may provide that the security interest shall extend to and include after-acquired inventory coming into the possession of the debtor, and the security interest will take priority over any subsequent encumbrances except as provided by the Code.
When the statutes relating to title certificates for motor vehicles is read in pari materia with the Uniform Commercial Code, there can be little doubt but that the provisions of the Code apply to a dealer’s inventory of newly manufactured mobile homes which are held for retail sale in the usual course of business. F.S. section 319.-20, F.S.A., extends the application of the law relating to the registration and licensing of motor vehicles to mobile homes of the type involved in this proceeding. Under this chapter of our laws an automobile dealer is relieved from the necessity of obtaining a certificate of title on any new motor vehicle acquired by him for the purpose of sale provided he obtains a manufacturer’s statement of origin for the vehicle at the time he accepts delivery of it.[2]
The Uniform Commercial Code does not apply to an inventory of motor vehicles which are not held by the dealer for the purpose of sale.[3] Where, however, motor vehicles or mobile homes are held for retail sale by a dealer, then financing statements covering such units fall within and are covered by the provisions of the Uniform Commercial Code.
Founders urges that its previously perfected security interest in Glover’s inventory of mobile homes, including after-acquired inventory, attached to the four newly manufactured units delivered to Glover by Taylor, and that its interest has priority over any purchase money security interest now claimed by Taylor. Founders predicates its position on the proposition that Taylor failed to protect the priority of its interest in the units delivered to Glover by complying with the requirements of the Uniform Commercial Code. The Code provides in pertinent part as follows:
“(3) A purchase money security interest in inventory collateral has priority over a conflicting security interest in the same collateral if:
“(a) The purchase money security interest is perfected at the time the debtor receives possession of the collateral; and
“(b) Any secured party whose security interest is known to the holder of the purchase money security interest or who, prior to the date of the filing made by the holder of the purchase money security interest, had filed a financing statement covering the same items or type of inventory, has received notification of the purchase money security interest before the debtor receives possession of the collateral covered by the purchase money security interest; and
“(c) Such notification states that the person giving the notice has or expects to acquire a purchase money security interest in inventory of the debtor, describing such inventory by item or type.”[4]
*119 Founders rests its position on the contention that since Taylor did not notify it of its claim to a purchase money security interest in the four new mobile units delivered by it to Glover that it lost its claim to priority and is now subordinated to the security interest held by Founders under its previously filed financing statement. Founders cites in support of its position the case of Thomson v.. O. M. Scott Credit Corp.[5] construing a similar provision of the Uniform Commercial Code of Pennsylvania in which it was held that a purchase money security interest did not take priority over a previously perfected interest in after-acquired property where the purchase money party failed to give the notification required by the Uniform Commerical Code.
Whether Taylor was required by the provisions of the Code to notify Founders of its interest in the mobile home units being delivered by it to Glover in order to preserve the priority of its interest over the security interest of Founders in the after-acquired inventory of Glover would seem to depend upon whether Taylor owned or claimed a purchase money security interest in the units. If Taylor owned or held no purchase money security interest in the four units in question within the meaning and intent of the Code, then it would follow that it was under no obligation to notify Founders of that interest in order to preserve the priority of its ownership rights in the units involved.
The Code defines that which constitutes a security interest in goods or other chattels as follows:
“A security interest is a ‘purchase money security interest’ to the extent that it is:
“(1) Taken or retained by the seller of the collateral to secure all or part of its price; or
“(2) Taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used.” [6]
From the foregoing provision of the Code it clearly appears that a purchase money security interest is applicable only to property which has been the subject of a sale from the creditor to the debtor in which all or a part of the purchase price remained unpaid, or in which the money advanced by the creditor was used by the debtor in purchasing the collateral in which the creditor claims the security interest. In the case sub judice it is stipulated that the four mobile home units involved in this controversy were not sold by Taylor to Glover but were merely placed on his sales lot for the purpose of display and retail sale to the public. No statements of origin were issued by Taylor and delivered to Glover with the units, nor had certificates of title to the units been applied for or issued by the State Motor Vehicle Department. Glover possessed no indicia of ownership sufficient to enable him to pass title to the units to a purchaser. In fact, no documents of any kind were executed or exchanged between Taylor and Glover as evidence of the arrangement between them concerning the display and sale of the mobile homes. Under these circumstances it is our view that Glover was not a purchaser of the units in question and, therefore, Taylor possessed no purchase money security interest in the units within the contemplation of the priority provisions of the Code. Because of the foregoing it is our view, and we so hold, that Taylor was under no obligation to notify Founders of its interest in the units in order to preserve the priority of its interest over the security interest held by Founders in Glover’s after-acquired inventory. We hold in response to the question propounded for decision that Founders is not entitled to the enforcement of its judgment against the four new mobile homes and that Taylor does have a right to recover possession thereof as against the writs of *120 attachment and execution secured by Founders.
CARROLL, DONALD K., Acting C. J., and RAWLS, L, concur.

. Rule 4.6(a), F.A.R.
“When Certified, When it shall appear to a judge of the lower court that there is involved in any cause pending before him questions or propositions of law that are determinative of the cause and are without controlling precedent in this state and that instruction from the Court will facilitate the proper disposition of the cause, said judge, on his own motion or on motion of either party, may certify said question or proposition of law to the Court for instruction.”

. F.S. § 319.21(2), F.S.A.
“ * * * It shall not be necessary for any licensed automobile dealer in Florida to obtain a certificate of title on any new motor vehicle which he is selling or which he acquires for sale if he obtains a manufacturer’s statement of origin as provided in subsection (1) hereof, * * *.”

. F.S. § 679.9-302, F.S.A.
“(3) The filing provisions of this chapter do not apply to a security interest in property subject to a statute:
Hs * * * *
“(b) Of this state which provides for central filing of security interest in such property, or in a motor vehicle which is not inventory held for sale for which a certificate of title is required under the statutes of this state if a notation of such a security interest can be indicated by a public official on a certificate or a duplicate thereof.”

.F.S. § 679.9-312, F.S.A.

. Thomson v. O. M. Scott Credit Corp., 28 Pa.Dist. & Co.R.2d 85 (1962).

. F.S. § 679.9-107, F.S.A.