## COMMERCIAL CREDIT CORP. *v.* NATIONAL CREDIT CORP.

5-5662                                              473 S.W. 2d 881

Opinion delivered December 20, 1971

*Dickey, Dickey & Drake,* for appellant.

*Coleman, Gantt, Ramsey & Cox,* for appellee.

FRANK HOLT, Justice. The appellant and appellee are two competing creditors. They each claim superior liens on two automobiles, hereinafter referred to as the "Williams" and "Morgan" vehicles. The appellant was in

possession of the vehicles and the appellee had possession of the certificates of title. Appellant demanded delivery of the titles and, upon refusal, it brought suit seeking a mandatory injunction requiring appellee to deliver the titles. Appellee filed a counterclaim seeking possession of the two vehicles. As to the Williams automobile, the chancellor found that appellant's possession and subsequent bailment or storage of this vehicle with Mathews Motor Company did not constitute the actual or open possession required to perfect appellant's security interest under Ark. Stat. Ann. § 75-160 (Repl. 1957) and provisions of the Uniform Commercial Code; therefore, appellee National's security interest has priority and it is entitled to the proceeds of the mutually agreed sale of the Williams vehicle.

Commercial's records show that on February 24, 1969, it purchased a security agreement, dated four days previously, from Howard Mathews Motor Company, the dealer, showing the sale of a 1966 Buick Electra, 4-door Hardtop, Motor No. 484376X138256, to Kenneth Williams. Williams made five payments on the vehicle before default. On October 29, 1969 Commercial repossessed a 1966 Buick LeSabre, 2-door hardtop sedan, Motor No. 452376X138256, by Williams' wife bringing it to appellant. The latter vehicle was stored by appellant under a storage agreement, accurately describing the car, with Mathews Motor Company from October 29, 1969, to February 12, 1970, when Commercial again took physical possession of the vehicle. Commercial admittedly never had possession of the title to the automobile nor was its lien recorded pursuant to § 75-160.

National's records and dealings with the 1966 Buick show that on December 8, 1969, for an advance of $3,-950, Mathews Motor Company executed a 90-day promissory note and a trust receipt to National for (among other vehicles) a 1966 Buick LeSabre, 2-door Hardtop, Motor No. 452376X138256, together with a bill of sale of the automobile. At that time the title certificate, signed in blank by Kenneth Williams, was delivered to National. On February 10, 1970, National contacted Commercial and advised that a number of National's

trust receipt units were missing. On February 22, 1970, National filled out the title certificate showing itself as owner and forwarded the certificate to the Motor Vehicle Division of the Arkansas Department of Revenues. The title certificate was issued in National's name as owner on February 26, 1970. National's floor plan financing arrangement with Mathews had extended over a number of years. Its financing statement under the Uniform Commercial Code in connection therewith was last filed on January 15, 1962.

By virtue of the five-year limitation period set out in Ark. Stat. Ann. § 85-9-403(2) (Supp. 1969), National does not have a perfected security interest under the Uniform Commercial Code in either the automobile or the chattel paper. Furthermore, having failed to comply with Ark. Stat. Ann. § 75-160 and § 75-161, National was not a lien encumbrancer insofar as third parties are concerned under the Motor Vehicle Registration requirements on February 12, 1970, the date that Commercial took possession of the Williams Buick. See *West, Sheriff v. General Contract Purchase Corp.*, 221 Ark. 33, 252 S. W. 2d 405 (1952). In the absence of a lien either on the vehicle or the chattel paper, we must turn to the Uniform Commercial Code to determine the priority between the parties.

Under Ark. Stat. Ann. § 85-9-203(a) (Add. 1961) the security agreement need not be in writing where the collateral is in the possession of the secured party (see Comment 3).

Furthermore, § 85-9-305 provides:

"A security interest in letters of credit and advices of credit (subsection (2) (a) of Section 5-116 [§ 85-5-116]), goods, instruments, negotiable documents or chattel paper may be perfected by the secured party's taking possession of the collateral. If such collateral other than goods covered by a negotiable document is held by a bailee, the secured party is deemed to have possession from the time the bailee receives notification of the secured party's interest. A security in-

terest is perfected by possession from the time possession is taken without relation back and continues only so long as possession is retained, unless otherwise specified in this Article [chapter]. The security interest may be otherwise perfected as provided in this Article [chapter] before or after the period of possession by the secured party. [Acts 1961, No. 185, § 9-305.]''

To avoid the effect of the foregoing provisions of the Uniform Commercial Code, National makes two arguments. The first is that there is no evidence that either Kenneth Williams, Howard Mathews Motor Company or anyone else consented or agreed that Commercial would have a lien on the 1966 Buick LeSabre 2-door Hardtop as distinguished from the 1966 Buick Electra 4-door Hardtop described in Commercial's security agreement. This argument not only overlooks the provisions of § 85-9-203(a), *supra,* but also the evidence. While the testimony of Commercial's managers may not be considered as undisputed, their testimony to the effect that the 1966 Buick LeSabre is the vehicle surrendered to them by Kenneth Williams' wife after default in his car payments on the security agreement describing a 1966 Buick Electra and stored by Commercial with Mathews Motor Company is not controverted and there is nothing to indicate any lack of credibility. Furthermore, the parties stipulated at the beginning of the trial that the Buick LeSabre was in the possession of Commercial.

National's second argument is that since Commercial's lien was not perfected on December 8, 1969, when National acquired its security interest in the automobile, National takes priority under § 85-9-301(1)(b) which provides:

"Except as otherwise provided in subsection (2), an unperfected security interest is subordinate to the rights of *** a person who becomes a lien creditor without knowledge of the security interest and before it is perfected; ***.''

National does not here stand in the position of a "lien creditor" as that term is defined in subsection (3) of § 85-9-301 which provides:

> "A 'lien creditor' means a creditor who has acquired a lien on the property involved by attachment, levy or the like and includes an assignee for the benefit of creditors from the time of assignment and a trustee in bankruptcy from the date of the filing of the petition or a receiver in equity from the time of appointment."

Under the record before us and the foregoing provisions of the Uniform Commercial Code, we conclude that Commercial, when it took possession of the Williams Buick from Mathews Motor Company, thereafter, at least, stood in the position of a secured party in possession pursuant to the provisions of § 85-9-203(a) and § 85-9-312(5)(b). Since National was neither a lien encumbrancer, insofar as third parties are concerned, under the Motor Vehicle Registration Act [§ 73-160 and § 73-161] nor the holder of a perfected security interest, a "lien creditor" or a buyer in the ordinary course of business under the Uniform Commercial Code, it follows that the trial court erred in holding that National's security interest had priority over the security interest that Commercial perfected by possession.

The Morgan vehicle: In this second transaction, the Mathews Motor Company, on September 23, 1969, floor planned a 1969 Chevrolet Impala (and other vehicles) with National by executing a bill of sale, a 90-day promissory note for $10,500 and trust receipt, along with an unendorsed title which was in the name of another car dealer. This car was purchased from Mathews Motor Company on October 2, 1969, by Sharon Morgan who executed a security agreement. On October 6, Commercial discounted and purchased the Morgan security agreement from the dealer. After two payments, the purchaser defaulted and on March 18, 1970, appellant repossessed the automobile and stored it on its lot behind its office. On January 9, 1970, Mathews Motor renewed the original 90-day floor plan arrangement by giving

National a new note, bill of sale, and trust receipt. It appears that National did not check at this time to ascertain whether the Impala was still in possession of Mathews Motor, and, in fact, did not discover that it was missing until February 11, 1970. Neither Commercial nor National filed with respect to the Morgan Impala, although National secured an endorsement after February 11 to the title it held and then acquired a new title on February 27, 1970, from the Motor Vehicle Division of the Arkansas Revenue Department, naming itself as owner and not as a lienor.

Upon National's refusal to deliver the Morgan title, Commercial brought suit seeking delivery of the title as in the Williams' transaction, *supra*. Appellee National countersued for possession of the 1969 Impala. The court found that Commercial had not perfected its lien by filing or possession on January 9, 1970, the date on which appellee re-executed its "floor-plan" transaction with Mathews Motor Company, and, therefore, National was entitled to the proceeds of the mutually agreed sale.

It appears undisputed that National did not comply with the requirement of § 75-160 since it did not deposit or record with the motor vehicle registration department a copy of the promissory note, bill of sale, and trust agreement upon which the asserted prior lien is based. See, also, *West, Sheriff* v. *General Contract Purchase Corp., supra*.

Furthermore, we consider our recent opinion in the companion case of *Commercial Credit Corp.* v. *National Credit Corp.*, 251 Ark. 702, 437 S. W. 2d 876 (1971) controlling in this Morgan transaction. There, as here, National took a bill of sale, a trust receipt, and a certificate of title to a vehicle from the Mathews Motor Company, the retail dealer, to secure a floor-plan loan. Thereafter, the dealer sold the encumbered vehicle to a customer who signed a security agreement which was discounted and purchased by Commercial. Subsequently, upon learning of Commercial's security interest, National registered the vehicle in its name as the owner and indicated no liens. There, as here, National con-

tended its security interest was paramount to Commercial's security interest. In disagreeing with this contention we said:

> "*** Priorities between National and Commercial as to security interests in the automobile are not important to our decision in this case because National lost whatever security interest it may have had in the *automobile* when it permitted Matthews to sell the automobile in the regular course of Mathews' business, which was the business of selling automobiles at retail.

> \* \* \*

> Mathews sold Edgerson's (Morgan's) contract to Commercial within three days after he obtained it from Edgerson, and after Mathews sold Edgerson's contract to Commercial, National's security interest would not have followed the chattel paper into the hands of Commercial, but would have continued in the proceeds Mathews received from Commercial in the sale of the chattel paper (contract)."

Citing §§ 85-9-306, -308; Spivach, Secured Transactions Under the Uniform Commercial Code. See, also, *Associates Discount Corp.* v. *Old Freeport Bank,* 220 A. 2d 621 (Penn. 1966).

Neither does National have a perfected security interest under the Uniform Commercial Code in either the automobile or the chattel paper since National did not, as in Williams, *supra,* have a currently effective financial statement on file. Section 85-9-403(2).

We agree with the chancellor, there is no merit in National's contention that the car was merely a "loan" to Miss Morgan by a friend who was Mathews' salesman. Furthermore, Morgan's ownership would not be affected, with or without notice, by National's unfiled security agreement. Section 75-160; Williams, *supra.*

The decree is reversed and the cause remanded with directions to render a decree that Commercial was en-titled to the certificates of title to the Williams and the Morgan vehicles and, consequently, to the proceeds from the mutually agreed sales.

Reversed and remanded.

HARRIS, C.J., not participating.