[Civ. No. 14308. Third Dist. Apr. 3, 1975.]

MOTHER LODE BANK, Plaintiff and Appellant, v.
GENERAL MOTORS ACCEPTANCE CORPORATION, Defendant
and Respondent.

808

## COUNSEL

Maul & Dezzani and Donald M. Dezzani for Plaintiff and Appellant.

King & Mering and Harold T. King for Defendant and Respondent.

## OPINION

**EVANS, J.**—Plaintiff appeals from an adverse judgment in an action for declaratory relief brought against defendant, General Motors Acceptance Corporation. Plaintiff and defendant claim conflicting security interests in two motor vehicles. The matter was tried upon a stipulated statement of facts and comes to us on the clerk's transcript containing that stipulation.

### FACTS

In 1971, plaintiff, Mother Lode Bank, agreed to finance the purchase of new vehicles and to floor used vehicles for Targett Motors ("Targett"), a General Motors automobile dealership. Plaintiff also purchased conditional sales contracts from Targett when vehicles were sold. Such purchases were subject to a recourse contract requiring plaintiff to repossess the vehicles and Targett to accept their return and to repurchase the contract from the plaintiff by paying the unpaid balance of the contract less unearned interest.

In March and April 1972, two 1972 GMC pickup trucks were sold on conditional sales contracts. Each contract was assigned to the plaintiff subject to the recourse contract. The Department of Motor Vehicles issued ownership certificates for the vehicles designating each purchaser as registered owner and plaintiff as legal owner. At all times pertinent, possession of the certificates of title was with plaintiff.

Targett encountered financial difficulty and arranged additional financing with defendant, General Motors Acceptance Corporation. Defendant made a loan to Targett on or about June 9, 1972, and in connection therewith, Targett filed a financing statement[1] with the

---

[1]The formal requisites of financing statements are contained in section 9402 of the California Uniform Commercial Code which provides in part as follows: "(1) A

Secretary of State, thus perfecting in defendant a security interest in Targett's inventory of motor vehicles. Defendant further agreed to floor used vehicles for Targett upon request. For each used vehicle financed, Targett would execute a security agreement in favor of defendant.

In July 1972, the purchasers of the two vehicles in question defaulted on their contracts; and pursuant to the recourse terms of the assignment contract, plaintiff repossessed the vehicles and delivered them to Targett for repurchase. Plaintiff did not reassign the contracts to Targett or transfer legal title. Targett failed to repurchase the contracts as required. Instead, Targett floored the two vehicles in question with defendant and executed inventory security agreements covering each vehicle. At that time, Targett knew the status of title to each vehicle but nevertheless represented to defendant that Targett *owned* the vehicles and could give a valid security interest. Defendant did not check with the Department of Motor Vehicles to ascertain the status of title before making the loan to Targett and did not physically examine or seek to examine the certificates of title. Defendant relied on the representations of Targett and the fact that Targett had possession of the vehicles.

In August 1972, Targett went out of business, and plaintiff and defendant each claimed possession of the vehicles as collateral, resulting in the declaratory relief proceeding.

## SECURITY INTERESTS

Plaintiff's contentions may be summarized as follows: (1) the evidence does not support the court's finding that defendant had a security interest in the vehicles with priority over the security interest of plaintiff; (2) the finding of a security interest in the vehicles for defendant is contrary to the law.

The crucial question in considering plaintiff's first contention is whether there is any substantial evidence to support the trial court's findings or conclusion. ■ When a finding of fact is attacked on the ground that there is not any substantial evidence to sustain it, the power of an appellate court begins and ends with the determination as to

---

financing statement is sufficient if it is signed by the debtor and by the secured party, gives the name and mailing address of the secured party, the name and mailing address of the debtor and contains a statement indicating the types of collateral or describing the items of collateral. . . ."

whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding. (*Primm* v. *Primm* (1956) 46 Cal.2d 690, 693 [299 P.2d 231]; *Foreman & Clark Corp.* v. *Fallon* (1971) 3 Cal.3d 875 [92 Cal.Rptr. 162, 479 P.2d 362].) ■ We recognize that findings of fact must be liberally construed to support the judgment, and that all inferences reasonably deducible from the evidence which support the judgment will be accepted, while those which do not support it will be rejected. (*Hicks* v. *Hicks* (1962) 211 Cal.App.2d 144 [27 Cal.Rptr. 307].) With these concepts in mind, we conclude that plaintiff's contention is well taken. ■ The record is absent *any* evidence, let alone substantial evidence, to support a finding that Targett could, by execution of an inventory security statement and the filing of same as required by the California Uniform Commercial Code, create a valid, superseding security interest in the defendant.

Plaintiff's claim to a security interest in the motor vehicles is predicated exclusively upon the Department of Motor Vehicles' registration issued pursuant to sections 6300, 6301, 6302, and 6303 of the Vehicle Code.[2] These sections provide the exclusive method for perfecting security interests in motor vehicles (except vehicles in inventory stock). Section 6303 of the Vehicle Code indicates that the method provided therein for perfecting a security interest in a vehicle registered under the code is exclusive, but that once perfected, the California Uniform Commercial Code governs priorities. Ownership certificates indicating

---

[2]Section. 6300 of the Vehicle Code provides: "[N]o security interest in any vehicle registered under this code, . . . is perfected until the secured party or his successor or assignee has deposited with the department, . . . a properly endorsed certificate of ownership to the vehicle subject to the security interest showing the secured party as legal owner . . . ."

Section 6301 of the Vehicle Code provides: "When the secured party, his successor or assignee, has deposited with the department a properly endorsed certificate of ownership showing the secured party as legal owner or an application in usual form for an original registration, together with an application for registration of the secured party as legal owner, the deposit constitutes perfection of the security interest and the rights of all persons in the vehicle shall be subject to the provisions of the Uniform Commercial Code, . . . ."

Section 6302 of the Vehicle Code provides: "Upon the deposit of an application for registration of a secured party as legal owner and upon the payment of the fees as provided in this code, the department shall register the secured party, his successor or assignee as legal owner in the manner provided for the registration of motor vehicles under the provisions of this chapter."

Section 6303 of the Vehicle Code provides: "[T]he method provided in this chapter for perfecting a security interest on a vehicle registered under this code is exclusive, but the effect of such perfection, and the creation, attachment, priority and validity of such security interest shall be governed by the Uniform Commercial Code."

plaintiff as legal owner of each vehicle were issued April 29, 1972, and May 23, 1972, evidencing plaintiff's perfected security interest. Defendant's adverse claim is predicated upon the inventory security statements filed by Targett for defendant.

We are faced with a conflict in the security interests created by (1) the registration of the vehicles naming plaintiff as the legal owner, which title has not been changed; and (2) the security interest created by the filing of the financing statement covering each of the vehicles after repossession by plaintiff.

Defendant asserts the provisions of section 5907 of the Vehicle Code govern the perfection of security interests in motor vehicles which constitute inventory. It claims the two disputed vehicles were inventory of Targett and as such, were controlled through section 5907 by provisions of the California Uniform Commercial Code which exclusively control the validity and perfection of a security interest in inventory. We cannot agree with this interpretation. Section 5907 provides, "A secured party who *holds a security interest* in a *registered vehicle* which constitutes inventory as defined in the Uniform Commercial Code, *who has possession of the certificate of ownership issued for such vehicle*, if the certificate of ownership has been issued, need not make application for a transfer of registration and the Uniform Commercial Code shall exclusively control the validity and perfection of such security interest." (Italics added.) Defendant urges that the filing of the financing statement for each of the vehicles effectively vitiated plaintiff's prior security interest created by the deposit of the certificates of ownership. The stipulated facts do not support defendant's position. The parties stipulated that plaintiff at all times had possession of the certificate of ownership for each of the vehicles and was listed as the legal owner thereon. Targett cannot be considered a secured party within the purview of section 5907 of the Vehicle Code, holding a security interest in the registered vehicle, nor did Targett at any time have possession of the certificates of ownership. Under these circumstances, the provisions of section 5907, providing that the California Uniform Commercial Code exclusively controls the validity and perfection of security interests, do not apply. The stipulated facts disclose that Targett received possession of the vehicles without title as a result of the repossession by plaintiff. Plaintiff at all times retained legal title and the ownership certificates for each of the two vehicles. We conclude the provisions of section 5907 of the

Vehicle Code under the circumstances presented here do not provide aid or assistance to defendant.

The provisions of subdivision (5) of section 9312, subdivision (3)(b) of section 9302, section 9307, and section 9204 of the California Uniform Commercial Code,[3] when applied to the stipulated statement of facts, are determinative of the security problem.

Subdivision (5) of section 9312 of the California Uniform Commercial Code states that priority between conflicting security interests shall be determined by the order of perfection. Section 9302 of the California Uniform Commercial Code provides for the creation of security interests in motor vehicles by the filing of a financing statement when such vehicle is inventory. If the vehicle is not inventory, the section requires perfection of the security interest as provided in the Vehicle Code. (See fn. 3, below.)

Section 9204 of the California Uniform Commercial Code provides that a security interest cannot be created until there is agreement that the security attach, that value is given, and *the debtor has rights in the*

---

[3]Subdivision (5) of section 9312 of the California Uniform Commercial Code provides:

"In all cases not governed by other rules stated in this section . . . , priority between conflicting security interests in the same collateral shall be determined as follows:

"(a) In the order of filing if both are perfected by filing, regardless of which security interest attached first under Section 9204(.1) and whether it attached before or after filing;

"(b) In the order of perfection unless both are perfected by filing, regardless of which security interest attached first under Section 9204(1) and, in the case of a filed security interest, whether it attached before or after filing; and

"(c) In the order of attachment under Section 9204(1) so long as neither is perfected."

Section 9302 of the California Uniform Commercial Code providing that a financing statement must be filed to perfect all security interests, nonetheless exempts therefrom, in subdivision (3)(b), "[A] vehicle required to be registered under the Vehicle Code, unless such vehicle . . . is inventory."; and further provides, in subdivision (4), that "A security interest in a vehicle required to be registered under the Vehicle Code which is not inventory may be perfected only as provided in the Vehicle Code."

Section 9204 of the California Uniform Commercial Code provides:

"(1) A security interest cannot attach until there is agreement (subdivision (3) of Section 1201) that it attach and value is given and the debtor has rights in the collateral. It attaches as soon as all of the events in the preceding sentence have taken place unless explicit agreement postpones the time of attaching.

"(2) For the purposes of this section the debtor has no rights.

". . . . . . . . . . . . . . . . . . . . .

"(c) In a contract right until the contract has been made; . . ."

*collateral to give.* The security interest attaches as soon as each of the events specified have taken place unless explicit agreement postpones the timing of attachment. Plaintiff bank repossessed each of the vehicles under the terms of the sales contract and returned them to Targett pursuant to the recourse provisions of the contract. The ownership certificates were not delivered with the vehicles nor were the titles changed. Plaintiff demanded payment from Targett according to the terms of the recourse contract. Payment was not made. Approximately one month later, Targett pledged the vehicles as security for additional financing from the defendant. The stipulated statement of facts indicates that Targett knew it *had no rights* in the vehicles at the time of execution of the inventory security agreements. Targett also knew the status of title and misrepresented the same to defendant.[4] Targett did not, at the time of filing the inventory security statement, have any rights in either of the vehicles by which it could create a collateral security interest in the defendant. The repossession by plaintiff and delivery to Targett did not create rights in Targett but rather an obligation for Targett to repurchase the vehicles from plaintiff.

The provisions of section 9307 of the California Uniform Commercial Code lend no support to the judgment of the trial court. That section provides in part as follows: "A buyer in ordinary course of business . . . takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence." Subdivision (9) of section 1201 of the California Uniform Commercial Code defines buyer in ordinary course of business to be ". . . a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind . . . . 'Buying' may be for cash or by exchange of other

---

[4]"The purchaser, Harbor Light Chapel, Inc., did not make the payments due under the contract and the said motor vehicle was repossessed by the Mother Lode Bank on July 10, 1972, and returned to the premises of Targett Motors on said date pursuant to the terms of the repurchase agreement. The Bank made demand on Targett Motors for the repurchase of the contract. Targett Motors did not repurchase the contract and the Bank did not reassign the contract to Targett Motors nor did the Bank make any transfer of the certificate of title. The Bank retained possession of said certificate of title.

"On or about the 8th day of August, 1972, Targett Motors floored the said vehicle with GMAC and in connection therewith executed the inventory security agreement, a true copy of which is attached hereto, marked Exhibit 'K'. Targett Motors did not tell GMAC of the state of title of the vehicle and represented that it owned the same and could give a valid security agreement."

property or on secured or unsecured credit and includes receiving goods or documents of title under a preexisting contract for sale, but does not include a transfer in bulk or as security for or in total or partial satisfaction of a money debt." Defendant, by advancing flooring money to Targett, cannot be considered a *buyer in ordinary course of business*, but is rather a financing agency only, excluded from the protection created by section 9307.

We conclude the provisions of section 9204 of the California Uniform Commercial Code are here controlling and compel a reversal of the judgment. Targett, as debtor, did not acquire rights in the subject motor vehicles sufficient to transfer a valid security interest to the defendant. The initial security interest created by issue of the ownership certificates of the vehicles by the Department of Motor Vehicles indicating plaintiff as the legal owner is, and remains, the only valid security interest created. The action of Targett in filing financing statements without either possessing the security interest in the vehicles or the ownership certificates could not effectively perfect a security interest in defendant.

If we assume, however, that some security interest was created, the provisions of subdivision (5) of section 9312 of the California Uniform Commercial Code (fn. 3, *ante* p. 813) establish the priority of the conflicting security interests in favor of the plaintiff.

The judgment is reversed and the cause remanded to the trial court with directions to enter judgment in favor of plaintiff.

Puglia, P. J., and Friedman, J., concurred.