DRAPER BANK AND TRUST COMPA-NY, Plaintiff and Appellant,

v.

Ed LAWSON and Ed Lawson Chevrolet, Inc., Defendants.

GENERAL MOTORS ACCEPTANCE CORPORATION, a New York Corporation, Plaintiff in Intervention and Respondent,

v.

DRAPER BANK AND TRUST COMPANY, Ed Lawson and Ed Lawson Chevrolet, Inc., Defendants in Intervention and Appellant.

No. 18595.

Supreme Court of Utah.

Dec. 13, 1983.

Dwight L. King, Salt Lake City, for Draper Bank.

G. Blaine Davis, Salt Lake City, for Lawson.

Jay V. Barney, Denver C. Snuffer, Jr., Murray, for Gen. Motors.

STEWART, Justice:

This appeal involves a U.C.C. Article 9 priority dispute between the plaintiff, Draper Bank and Trust Company, and the plaintiff-in-intervention, General Motors Acceptance Corporation (GMAC). Both parties claim a security interest in three cars in the inventory of the defendant, Ed Lawson Chevrolet, Inc. The trial court granted GMAC summary judgment. We affirm.

As required on an appeal from a summary judgment, we view the evidence in a light most favorable to the losing party, i.e., Draper Bank. *Bowen v. Riverton City*, Utah, 656 P.2d 434 (1982); *Durham v. Margetts*, Utah, 571 P.2d 1332 (1977). The following facts are undisputed. GMAC had a "flooring" arrangement with Ed Lawson Chevrolet in which GMAC loaned money (apparently in the form of either new automobiles or cash advances) to Ed Lawson Chevrolet, and took a security interest in Lawson Chevrolet's entire inventory of motor vehicles. During the years 1977–1979, the inventory was cover-

ed by a valid financing statement filed by GMAC pursuant to U.C.A., 1953, § 70A–9–401 et seq. (U.C.C. § 9–401 et seq.). GMAC's practice was to periodically check Lawson Chevrolet's inventory to ensure that its security interest was adequately protected.

In 1979, Peter Foukas, the principal in an auto dealership named United Auto Sales, approached Draper Bank and sought a loan of $30,000 for Lawson Chevrolet. Foukas was apparently a partner in Lawson Chevrolet, although the record is unclear on this fact. In any event, on appeal both Draper Bank and GMAC agree that Foukas had authority to act for Lawson Chevrolet.

Unaware of GMAC's security interest, Draper Bank approved the loan and took as security for the loan the Manufacturer's Statements of Origin (MSOs) for a Chevy Van and two Chevy Camaros.[1] The MSO for the Chevy Van listed Lawson Chevrolet as the transferee; the MSOs for the Camaros listed a Colorado car rental agency as the transferee, and were accompanied by bills of sale naming United Auto Sales as the new owner.

On May 23, 1980, GMAC repossessed from Lawson Chevrolet's car lot the Chevy Van and the two Camaros. This lawsuit ensued. Both Draper Bank and GMAC claim a superior interest in the three vehicles.

In its motion for summary judgment, GMAC argued (1) that this dispute is governed by U.C.A., 1953, § 70A–9–101 et seq. (Article 9 of the U.C.C.), and (2) that therefore GMAC's security interest was superior to any interest that Draper Bank might have because GMAC had perfected its interest by filing a financing statement, and Draper had not.

On appeal, Draper Bank argues (1) that because it had possession of the MSOs, its security interest was superior to GMAC's and (2) that, in any event, GMAC should be estopped from asserting its security inter-

---

1. An MSO is a certificate issued by an automobile manufacturer at the time a new motor vehicle is first transferred in ordinary com-
merce, which lists the distributor or dealer to whom the vehicle is transferred.

est because it allowed Lawson Chevrolet to have possession of the MSOs.

 Utah statutes governing security interests in motor vehicles clearly provide that if vehicles are in the possession of a dealer and are in his inventory, security interests in those vehicles may be perfected under the U.C.C. The general rule governing liens on motor vehicles not in a dealer's inventory is that perfection of a lien is governed exclusively by the filing and title provisions of the Motor Vehicle Act, U.C.A., 1953, §§ 41–1–81 to 41–1–86. *See* §§ 41–1–80, 41–1–87, 70A–9–302(3)(b) and (4). Under these provisions the perfection of a lien on an automobile depends upon the appearance of the lien interest on the vehicle's certificate of title. *See* § 41–1–83. The filing of a financing statement pursuant to Article 9 is not effective to protect a lien interest in an automobile sold to a consumer. § 41–1–80(2); § 70A–9–302(3)(b).

A different rule applies, however, to motor vehicles in a car dealer's inventory. Section 41–1–80(2) of the Motor Vehicle Act, entitled "Filing Liens and Encumbrances," provides:

Security interests in inventory which consists in part of vehicles of a type subject to registration hereunder, which vehicles are held for sale by a person who is in the business of selling goods of

that kind, shall be perfected in accordance with the provisions of section 70A–9–302 ....

Section 70A–9–302(3)(b) provides that vehicles in inventory, but not those out of inventory, may be perfected by filing under the U.C.C.:

The filing of a financing statement otherwise required by this chapter is not necessary or effective to perfect a security interest in property subject to

. . . .

(b) those statutes of this state which provide for the indication of security interests on certificates of title as a condition of the perfection of such security interests, *but during any period in which collateral is inventory held for sale by a person who is in the business of selling goods of that kind, the filing provisions of this chapter (part 4) apply to a security interest in that collateral created by him as debtor* .... [Emphasis added.]

Thus, these provisions treat the perfection of a security interest for the financing of automobiles held in a dealer's inventory for resale differently from a security interest in an automobile for some other reason. Other jurisdictions have uniformly interpreted § 9–302(3)(b) in the same way,[2] as has one well-known U.C.C. commentator.[3]

**2.** In North Dakota, § 9–302(3)(b) contains the same "but during ..." language (italicized in the above quote) as Utah's. *Bank of Beulah v. Chase,* N.D., 231 N.W.2d 738 (1975); *Ramsey National Bank and Trust Co. v. Suburban Sales and Service, Inc.,* N.D., 231 N.W.2d 732 (1975). *See also In re Buckley,* 29 U.C.C.Rep.Serv. (Callaghan) 1042, 5 B.R. 503 (D.C.Minn.1980). In other jurisdictions, the language of § 9–302(3)(b) is similar in that it expressly excludes goods or motor vehicles in inventory from the effect of § 9–302(3)(b) and (4). *Borg-Warner Acceptance Corp. v. Atlantic Bank,* Fla.App., 364 So.2d 35 (1978); *Taylor Mobile Homes v. Founders Investment Corp.,* Fla.App., 238 So.2d 116 (1970); *National Bank & Trust Co. v. Moody Ford, Inc.,* 149 Ind.App. 479, 273 N.E.2d 757 (1971); *Central National Bank of Mattoon v. Worden-Martin, Inc.,* 90 Ill.App.3d 601, 46 Ill. Dec. 99, 413 N.E.2d 539 (1980). *See Mother Lode Bank v. General Motors Acceptance Corp.,* 46 Cal.App.3d 807, 120 Cal.Rptr. 429 (1975); *In re Haugabook Auto Co., Inc.,* 9 U.C.C.Rep.Serv.

(Callaghan) 954 (M.D.Ga.1971); *McDonald v. Peoples Automobile Loan & Finance Corp.,* 115 Ga.App. 483, 154 S.E.2d 886 (1967). *See also General Electric Corp. v. Tidwell Industries, Inc.,* 115 Ariz. 362, 565 P.2d 868 (1977); *Guy Martin Buick, Inc. v. Colorado Springs National Bank,* 184 Colo. 166, 519 P.2d 354 (1974); *General Motors Acceptance Corp. v. Keil,* Iowa, 176 N.W.2d 837 (1970); *Farmers and Merchants Bank & Trust v. Ksenych,* S.D., 252 N.W.2d 220 (1977). *But see Morris Plan Co. v. Moody,* 266 Cal.App.2d 28, 72 Cal.Rptr. 123 (1968); Op.Atty Gen., Neb. No. 108–65, 3 U.C.C.Rep.Serv. (Callaghan) 104 (Sept. 9, 1965).

**3.** Anderson states:

The motor vehicle code, in its provision for the notation of an encumbrance on the title certificate, does not control the manner of perfecting a security interest by a creditor advancing money for the wholesale financing of new cars.

■ In the present case, Draper Bank concedes that GMAC filed a valid financing statement covering the three disputed vehicles and that the statement was perfected under § 70A–9–303 at the time the security interest attached. Attachment occurred when Lawson Ford signed the security agreement, GMAC gave value and Lawson Ford acquired rights in the three disputed vehicles.[4] § 70A–9–203(1). Therefore, pursuant to §§ 70A–9–301 and –312, GMAC's perfected security interest was superior to any unperfected interest of Draper Bank.

■ Draper Bank's first argument, that its possession of the MSOs gives it a superior interest, is without merit. Under the U.C.C., the mere possession of an MSO is not sufficient to perfect a security interest in a motor vehicle. *In re Haugabook Auto Co., Inc.,* 9 U.C.C.Rep.Serv. (Callaghan) 954 (M.D.Ga.1971); *Ramsey National Bank & Trust Co. v. Suburban Sales & Service, Inc.,* N.D., 231 N.W.2d 732 (1975). *See General Electric Credit Corp. v. Tidwell Industries,* 115 Ariz. 362, 565 P.2d 868 (1977). *See also Commercial Credit Corp. v. National Credit Corp.,* 251 Ark. 702, 473 S.W.2d 881 (1971) (possession of title certificates insufficient to perfect). Draper Bank cites no section of the U.C.C. that would give it priority over a perfected security interest because it holds the MSOs.

■ Draper Bank's second argument, that GMAC should be estopped because it allowed Lawson Ford to have possession of the MSOs, is also without merit. Draper Bank asserts that if GMAC wished to retain a security interest in the vehicles, it should have obtained possession of the MSOs, or at least noted its security interest on the MSOs by a restrictive endorsement. Draper Bank cites only pre-U.C.C. cases in support of this argument.

Under the U.C.C., MSOs are not documents of title. § 70A–1–201(15); *Nationwide Mutual Insurance Co. v. Hayes,* 276 N.C. 620, 174 S.E.2d 511 (1970); *Medico Leasing Co. v. Smith,* Okl., 457 P.2d 548 (1969); *National Exchange Bank v. Mann,* 81 Wis.2d 352, 260 N.W.2d 716 (1978); *In re Emergency Beacon Corp.,* 665 F.2d 36 (2d Cir.1981); *In re Foster,* 445 F.Supp. 949 (N.D.Okl.1978); *Semple v. State Farm Mutual Auto Insurance Co.,* 215 F.Supp. 645 (E.D.Pa.1963). Therefore, possession of an MSO is neither an indication that one has exclusive control of a vehicle, nor that no liens exist on the vehicle. As stated above, a security interest in an inventoried motor vehicle must be perfected by a U.C.C. filing, not by obtaining possession of the MSO or a restrictive endorsement on the MSO. Draper Bank had the responsibility in this case to check the U.C.C. filings before it assumed that no liens existed on the vehicles.

■ Draper also argues that pursuant to § 70A–9–302(1)(f) it was exempt from filing a financing statement to perfect its interest. This subparagraph waives the requirement of filing a financing statement for a security interest created by a "collecting bank" under § 70A–4–208. This article of the Commercial Code deals with commercial paper. Section 70A–4–104(g) defines "item" as "any instrument for the payment of money even though it is not negotiable." Under § 70A–4–208(1)(c), a bank has a security interest in an "item" if the bank makes an advance against it; under subparagraph (3)(b) filing is not required for such security interests, and under subparagraph (3)(c) such a security interest has priority over conflicting perfected security interests. The text of the MSOs in this case clearly indicates that they are not instruments for the "payment of money."

---

4 R. Anderson, Uniform Commercial Code § 9–302:21 at 273 (2d ed. 1971).

**4.** The parties have both assumed on appeal that Lawson Chevrolet had some kind of interest in the three repossessed vehicles at the time they were repossessed. We therefore decide the case on those facts. Neither side raises the issue of whether Lawson Chevrolet ever had "rights in the collateral," § 70A–9–203(1)(c), at any time before the vehicles were repossessed.

On appeal, GMAC asserts that Draper Bank's appeal was in bad faith, and asks for attorney's fees pursuant to U.C.A., 1953, § 78–27–56 (Supp.1983). That section allows a court to award attorney's fees to a "prevailing party" if an action or defense to the action was "without merit and not brought or asserted in good faith." Although Draper Bank's claims of error are without merit, it did not appeal in bad faith. *Cady v. Johnson,* Utah, 671 P.2d 149 (1983).

Affirmed. Costs to GMAC.

HALL, C.J., and OAKS, HOWE and DURHAM, JJ., concur.