UNION NATIONAL BANK OF LITTLE ROCK
*v.* Joseph HOOPER, Boyd Bond, et al.

87-239                                    746 S.W.2d 550

Supreme Court of Arkansas
Opinion delivered March 21, 1988

*Arnold, Grobmyer & Haley, A Professional Association,* for appellant.

*Wright, Lindsey & Jennings,* for appellee/cross appellant

Frank J. Wills III.

ROBERT H. DUDLEY, Justice. In May of 1983, the appellant, Union National Bank of Little Rock, loaned $28,819.00 to the Hooper-Bond Company. The debt was evidenced by a promissory note and was secured by a lien on a 1983 BMW automobile. Joseph Hooper and Boyd Bond, principals in Hooper-Bond, personally guaranteed payment of the note. Twenty-eight months later, in September of 1985, Union and Hooper-Bond agreed to substitute a 1984 BMW automobile as security for the loan. In November of 1985, Union filed with the Revenue Division of the Department of Finance and Administration a certified copy of a motor vehicle security agreement evidencing its security interest in the 1984 automobile. This, however, was the only step taken by Union to perfect its lien. Nothing was done with the certificate of title or the manufacturer's statement of origin. Some months later, in April of 1986, the appellee, Frank J. Wills III, purchased the 1984 automobile from Hooper-Bond for $14,000.00. At the time, Joseph Hooper, on behalf of Hooper-Bond, represented to appellee Wills that a valid certificate of title had been issued and that the vehicle was free and clear of all liens. Appellee Wills made a $5,000.00 partial payment. Hooper delivered the automobile to Wills at that time and stated that he would execute a bill of sale and give it to Wills along with the certificate of title. Upon receiving title Wills was to pay the $9,000.00 remaining due. Hooper never provided appellee Wills with a bill of sale or a certificate of title.

In October of 1986, appellant Union filed suit against Hooper-Bond Company, Joseph Hooper, and Boyd Bond alleging default on the loan and asking for possession of the car, sale of the car in a commercially reasonable manner, and deficiency judgments. In January of 1987, Union filed an amended complaint stating that it had a perfected security interest in the 1984 automobile and adding appellee Wills as a defendant. Appellee Wills subsequently filed a counterclaim against Union asking for a declaratory judgment on the issue of Union's alleged security interest, and he also filed a cross-claim against Hooper-Bond, Hooper, and Bond for compensatory and punitive damages.

The trial court entered a declaratory judgment in favor of appellee Wills and against appellant Union, ruling that Union did

not have a perfected security interest in the automobile and that Wills was entitled to possession. We affirm that part of the holding.

In addition, the trial court entered a judgment against Hooper-Bond on Wills' cross-claim, awarding Wills $2,700.00 in compensatory damages and $2,700.00 in punitive damages. The trial court further ruled that Union was entitled to subrogation on the $9,000.00 which Wills still owed to Hooper-Bond on the purchase price of the 1984 automobile. The trial court held that Wills could offset against Hooper-Bond the $2,700.00 compensatory damages but not the $2,700.00 punitive damages. On cross-appeal, Wills asserts that the trial court erred in refusing to allow offset of the punitive damages. We agree.

■ Even though the cases against Joseph Hooper and Boyd Bond are stayed, and still pending, the trial court found that there is no just reason to delay entering the judgment. *See* ARCP Rule 54(b). Accordingly, the trial court's order is an appealable order.

On direct appeal, Union argues that the trial court erred in ruling that Union was not entitled to possession of the 1984 automobile. The ruling of the trial court was correct.

Arkansas law provides three alternative methods for perfecting security interests in automobiles:

ALTERNATIVE A: Ark. Stat. Ann. § 75-160(b) (Repl. 1979) provides:

> (b) There shall be deposited with the department a copy of the instrument creating and evidencing such lien or encumbrance, which instrument is executed in the manner required by the laws of this State with an attached or indorsed certificate of a notary public stating that the same is a true and correct copy of the original and accompanied by the certificate of title last issued for such vehicle.

Under this provision, Union would have had to file both a certified copy of the instrument creating and evidencing the lien and the vehicle's last certificate of title. Union did not meet these requirements because it did not file the vehicle's last certificate of title.

ALTERNATIVE B: Ark. Stat. Ann. § 75-160(d) (Repl.

1979) provides:

> (d) If the vehicle is of a type subject to registration hereunder but has not been registered and no certificate of title has been issued therefor then the certified copy of the instrument creating such lien or encumbrance shall be accompanied by an application by the owner in usual form for an original registration and issuance of an original certificate of title. In every such event such application shall be accompanied by the fee or fees as provided in this Act [§§ 75-101—75-191].

Under this provision Union would have had to file a certified copy of the instrument creating and evidencing the lien accompanied by an application by the owner for registration and certificate of title. Union did not meet these requirements because there was no accompanying application for registration.

ALTERNATIVE C: Ark. Stat. Ann. § 75-161(b) (Supp. 1985) provides:

> (b) A lienholder may, at his option, record the lien on the manufacturer's statement of origin or on an existing certificate of title and in addition file with the Revenue Division of the Department of Finance and Administration a certified copy of the instrument creating and evidencing such lien or encumbrance, and shall remit therewith a fee of one dollar ($1.00) for each lien to be filed, which such recording and filing shall constitute constructive notice of such lien against the vehicle described therein to creditors of the owner, subsequent purchasers and encumbrancers, except such liens as are by law dependent upon possession. A photocopy of the manufacturer's statement of origin or of such existing certificate of title or of ownership showing the lien recorded thereon and certified as a true and correct copy by the party recording the lien shall be sufficient evidence of such recording.

Under this provision, Union would have had to record the lien on the manufacturer's statement of origin or the certificate of title and to file a certified copy of the instrument creating and evidencing the lien. Union did not meet these requirements because it did not record the lien on the manufacturer's statement

of origin or the certificate of title.

Union simply did not comply with any of the alternative methods for perfecting security interests in automobiles. Union tacitly admits it did not perfect its security interest, and, even so, asks us to excuse it from statutory compliance because it did not have the certificate of title or the statement of origin. We decline the request, and, instead, follow the quoted statutes. Aside from our interest in following the statutes, we note that Union could have easily avoided its problem by refusing to agree to a substitution of collateral until the proper documents were provided.

Since Union did not comply with the perfection requirements of the quoted statutes, appellee Wills, the subsequent purchaser, is entitled to possession and ownership of the automobile under the following provisions of Ark. Stat. Ann. § 75-160(a) (Repl. 1979):

> *No* conditional sale contract, conditional lease, chattel mortgage, or other lien or *encumbrance* or title retention instrument *upon a vehicle, of a type subject to registration under the laws of this state* other than a lien dependent upon possession, *is valid as against* the creditors of an owner acquiring a lien by levy or attachment or *subsequent purchasers* or encumbrances *with or without notice until the requirements of this article [§§ 75-160, 75-161] have been complied with.* (Emphasis added.)

In *Commercial Credit Corp.* v. *National Credit Corp.*, 251 Ark. 702, 704, 473 S.W.2d 881, 884 (1971), we wrote, "[H]aving failed to comply with Ark. Stat. Ann. § 75-160 and § 75-161, National was not a lien encumbrancer insofar as third parties are concerned under the Motor Vehicle Registration requirements."

Similarly, in this case, Union was not a lien encumbrancer insofar as Wills, the subsequent purchaser, was concerned. Thus, the trial court correctly awarded possession and ownership to Wills.

On cross-appeal Wills alleges that the trial court erred in prohibiting him from offsetting the punitive award against the remaining balance due Hooper-Bond. The argument is meritorious. On the basis of a cross-claim against Hooper-Bond, Wills

was awarded $2,700.00 compensatory damages and $2,700.00 punitive damages. Subsequently, the trial court ruled that Union was entitled to subrogation on the amount Wills owed to Hooper-Bond on the 1984 automobile. The trial court allowed Wills to offset the compensatory but not the punitive damages.

■ In summary, on one hand, Wills owed $9,000.00 to Hooper-Bond on the purchase price of the car. On the other hand, Hooper-Bond owed Wills $5,400.00, the total of the compensatory and punitive awards. Thus, Wills is liable to Hooper-Bond for the difference, or $3,600.00. Wills owed nothing to Union. He only owed Hooper-Bond. Union can collect through subrogation only the amount Hooper-Bond was entitled to collect. The subrogee can have rights no greater than those of the subrogor. *Aetna Casualty & Sur. Co.* v. *Taylor*, 177 Ark. 181, 5 S.W.2d 929 (1928).

Affirmed on direct appeal. Reversed on cross appeal.

PURTLE and HAYS, JJ., affirm on direct appeal and affirm on cross appeal.

GLAZE, J., affirms on direct appeal and concurs on cross appeal.

TOM GLAZE, Justice, concurring. I fully agree with the majority's decision on direct appeal, but concur as to that portion of the court's holding on cross appeal allowing Wills to offset punitive damages against Union National Bank.

First, whether the circuit court had authority to subrogate Wills' promissory note (held by Hooper Bond Co.) to the Bank was never questioned below. Yet, from my examination of the documents, I find nothing that provides for subrogation rights. Because no contractual agreement provided the remedy of subrogation, the parties should have tried the issues of subrogation and set off in chancery instead of circuit court. In *Southern Cotton Oil Co.* v. *Napoleon Hill Cotton Co.*, 108 Ark. 555, 158 S.W. 1082 (1913), the court explained that the doctrine of subrogation is a creature of equity, "having for its basis the doing of complete and perfect justice between the parties, without regard to form, and its purpose and object is the prevention of injustice." *See also Baker, Adm'r* v. *Leigh*, 238 Ark. 918, 385 S.W.2d 790 (1965); *Webster* v. *Horton*, 188 Ark. 610, 67 S.W.2d

200 (1934). Likewise, the doctrine of equitable setoff is available in equity although the remedy for setoff of contract and tort claims is also provided by statute. *See* Ark. Code Ann. § 16-63-206(a) (1987). In any event, the Bank waived all equitable remedies it may have had by failing to move that the subrogation matter be transferred to chancery court.

On appeal, this court then is left with the circuit court's subrogation of the Wills' note to the Bank as not having been challenged; however, Wills' attempt to setoff his punitive damages award against that note was argued below and is now in issue and must be decided.

As the majority court suggests, the subrogee (Bank) must operate under the same conditions *and limitations* as the creditor (Hooper Bond) whose rights he inherits. 83 C.J.S. *Subrogation* § 14 (1953). Although Union National Bank argues that it is being forced to pay for the wrong of another, it is not without recourse. In *Home Insurance Co. v. Lack*, 196 Ark. 888, 120 S.W.2d 355 (1938), citing from 60 C.J. 728, we said, "As a general rule any person who, pursuant to a legal obligation to do so, has paid even indirectly for a loss or injury resulting from the wrong or default of another, will be subrogated to the rights of the creditor or injured person against the wrongdoer or defaulter." In sum, after the setoff is permitted against the Wills' note, the Bank will be entitled to seek its cause of action against Hooper Bond (and its principals) for the punitive damages which were awarded Wills on his fraud claim against Hooper Bond. In this respect, Hooper Bond and its principals are not absolved of their wrongdoing and remain liable for it.