**SOUTHEAST FIRST NATL BANK
OF MIAMI**

v.

**SECURITY PEOPLES TRUST CO. et al.**

v.

**FORD MOTOR COMPANY.**

Civ. A. No. 76–35 Erie.

United States District Court,
W. D. Pennsylvania.

Dec. 11, 1979.

Harry D. Martin, Erie, Pa., for plaintiff.

Irving O. Murphy, Erie, Pa., for defendant.

Will J. Schaaf, Erie, Pa., for third party defendant.

MEMORANDUM DENYING PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT AND FINDINGS OF FACT AND FOR ADDITIONAL FINDINGS

KNOX, District Judge.

On August 2, 1979, after more than a week of non-jury trial, this court at the conclusion of plaintiff's case granted defendant's motion for involuntary dismissal under Rule 41(b) and entered judgment in favor of defendant and against plaintiff. Other paragraphs of the order dismissed the remaining claims against other defendants and by defendant Security Peoples Trust Company (Security) against Ford Motor Company. No objections to these other orders were filed.

On August 8, 1979, plaintiff Southeast First National Bank of Miami (Southeast) filed the motion to amend judgment and for other relief which is presently before the court for disposition. Briefs were filed and oral argument held September 18, 1979.

At the time of granting Security's motion for involuntary dismissal because of Southeast's failure to make out a case entitling it to relief the court dictated its reasons at length upon the record. These reasons, including adoption of certain of Security's Proposed Findings of fact were immediately transcribed and filed of record. The relevant portion thereof is incorporated herein and copied at length as Appendix A.[1]

The findings as modified by the court appear as Appendix B.

In the complaint in this case, there were two counts: (1) to replevy certain motor vehicles as to which plaintiff claimed title and right to possession and (2) to establish a constructive trust on the proceeds of sales of vehicles claimed by the plaintiff which had been sold by Security.

The Uniform Commercial Code is in effect in both the States of Pennsylvania and Florida where there is little if any difference as to the law. This case, however, was tried in a U.S. District Court sitting in Pennsylvania and we would ordinarily apply the law of Pennsylvania including its rules of conflicts except where it is shown that the law of another state is to the contrary. In this case, we find no appreciable difference between the law of Pennsylvania and the law of Florida and as a matter of fact find the Florida decisions cited in the Appendix to be in accord with the law of Pennsylvania.

Plaintiff, in its motion to amend judgment seems to rely upon the fact that in this motion for involuntary dismissal, the plaintiff having produced Florida titles and security interests covering these motor vehicles would be entitled to recover unless the defendant has produced security interests and titles which override those of plaintiff.

This is not the law. In Article 9–204 of the Uniform Commercial Code, it is provided that "[a] security interest cannot attach until there is agreement (subsection (3) of section 1–201) that it attach and value is given *and the debtor has rights in the collateral.*" Assume that the first two requirements are satisfied, the holding of this court is that the debtor had no rights in the collateral and that therefore the basis upon which the Florida security interests and titles were based must collapse.

It is the law in replevin that a plaintiff must recover on the strength of its own title and not the weakness of the defendants. See *Blossom Products Corp. v. Natl Underwear Co.,* 325 Pa. 383, 191 A. 40 (1937); *H. L. Braham & Co. v. Surrell,* 115 Pa.Super. 365, 176 A. 64 (1935); *Sork v.*

---

1. The court has corrected certain typographical errors and misquotations in the transcript.

*Label*, 133 Pa.Super. 169, 2 A.2d 521; *Internat'l. Electronics Co. v. NST Metal Products Co.*, 370 Pa. 213, 88 A.2d 40 (1952).

In the instant case, we held at the time of granting the motion for involuntary dismissal that plaintiff's titles and security interests were based on void titles issued without jurisdiction in Florida.

Regardless of this, the record shows that the plaintiff called for cross examination Mr. Manucci, Vice President of Security who testified to various matters including the security interests of Security and the terms of the security agreement held by Security were read into evidence. See NT 77–78, 104–110, 116, 117.

It further appears that the proceeds of cars sold by Security cannot be traced and therefore plaintiff has not established its basis for showing a constructive trust. See findings 42, 43, 44.

■ The record shows that Southeast knew Security had a floor plan interest in these cars and we find it was not a purchaser in the ordinary course as required by section 9–307(1) protecting ordinary consumers. It has been held that this language does not protect a financing institution as a buyer in ordinary course. See *Associates Discount Co. v. Old Freeport Bank*, 421 Pa. 609, 220 A.2d 621 (1966); *Motherlode Bank v. GMAC*, 46 Cal.App.3d 807, 120 Cal.Rptr. 429 (1975).

Upon reconsideration of the whole matter and consideration of the motion to amend judgment and other motions filed by plaintiff and after considering the briefs and arguments of counsel with respect thereto, the court concludes that the order of involuntary dismissal was properly entered.

An appropriate order will be entered.

### APPENDIX A

(The following proceedings were held commencing at 1:45 p.m.)

THE COURT: Gentlemen, we have before us a case involving conflicting interests on a large number of motor vehicles which it appears were titled in both Pennsylvania and Florida and we have covered at least part of the evidence introduced so far by conflicting security interests by the plaintiff, the Southeast First National Bank of Miami, and Security-Peoples Trust Company of Erie, Pa. The evidence as produced in this case is a distressing, sordid tale of fraud and chicanery as a result of which certain people are going to have to suffer. It is disturbing to find conduct like this going on in the business world but, nevertheless, when we're faced with a situation like this, it has to be decided.

The defendant has moved for an involuntary dismissal under Rule 41(b) on the grounds that upon the facts and the law the plaintiff has shown no right to relief and the Court after lengthy consideration of the matter and the authorities cited by counsel has concluded that the motion must be granted.

We start out with the proposition under Pennsylvania law which has been recognized by our Supreme Court for many years starting with the case of *Majors v. Majors*, 349 Pa. 334, 37 A.2d 528 and followed by the case of *Speck Cadillac-Olds v. Goodwin*, 373 Pa. 83, 95 A.2d 191 and *Rice Street Motors v. Smith*, 167 Pa.Super. 159, 74 A.2d 575 that a certificate of title to a motor vehicle is an indicia of title but does not establish ownership of the vehicle. It is not to establish the ownership of the vehicle but to show the name of the person with the right of possession under the law. It was further held in the *Speck* case that estoppel may be found where the original vendor will not be allowed to claim the vehicle because he has delivered possession and clothed the purchaser with the indicia of title.

■ Now aside from that, it is true that a certificate of title is evidence tending to establish ownership and this is prima facie evidence of the ownership of a vehicle. The plaintiff has come forward in this case

with Florida certificates of title duly issued by the authorities in that State which on the face of them appear to be regular but, on the other hand, these cases all say that such indicia are not conclusive. It would be permissible for the defendant or the other party in any such case to show that the certificates of title were invalid or were obtained by fraud or forgery and hence should not be given the usual effect they are given and so we start out with the proposition that the plaintiff, the Southeast First National Bank of Miami, comes forward with these documents and prima facie on the face of things if there were nothing more in the case, they would be entitled to recover in this situation, however, there are other considerations which entered into it and the purpose here is to inquire whether plaintiff's own case has shown such evidence as would indicate that these are not valid certificates of title; otherwise, all we could do is tell the plaintiff stand on its titles and pass the ball to the defendant to come forward with evidence showing what was wrong with them and why they should not be given the ordinary prima facie effect. In this case, however, the defendant points to certain things that have appeared in the plaintiff's own evidence and, therefore, the defendant contends it should not be required to come forward with further testimony. The matter is very close but in the opinion of the Court it largely depends upon whether Florida had any right to issue these certificates of title which the Southeast First National Bank took as evidence of ownership and advanced monies against the same and in considering this matter, the Court has stated that the argument has referred to Section 9–102 of the Commercial Code which says that "[T]his article applies so far as concerns any personal property and fixtures within the jurisdiction of this State." Interpreting this State in this situation as being Florida, it appears to the Court from the evidence presented, the overwhelming evidence presented on examination and cross examination during the plaintiff's case indicates that these vehicles never were in Florida and, therefore, Florida authorities had no jurisdiction to issue a certificate of title which would be valid for the same. We queried counsel as to that at time of argument and it appears that with the exception of one vehicle which is not involved here or in any event is not decisive of the situation which presents itself here, these vehicles never left Pennsylvania. There are other matters, of course, to be considered.

The Florida cases provide as I would expect Pennsylvania to provide and as Pennsylvania has indicated in several cases it does so hold that you cannot acquire title, a valid title from a thief or if the title is defective, you cannot by the use of a certificate of title defeat recovery of the vehicle by the true owner in the absence of estoppel of which I will deal later.

Under Florida law it has been held that one in possession of a defective Florida title certificate cannot defeat recovery of the vehicle by the true owner in the absence of estoppel and that the obtaining of a Florida motor vehicle title does not vest title where none exists. That's *Federal Insurance Company v. Mercer*, 237 So.2d 243 Florida District Court of Appeals 1970 and to the same effect is the holding in *Avis Rent-a-Car System v. Harrison Motors*, 151 So.2d 855, Second District of Florida Appeals Court 1963 which held that an automobile title certificate which is improperly issued due to false representations as to the ownership of an automobile coming from without the State was void ab initio. This reasoning applies here. The evidence as shown by Mr. Desser who was called by the plaintiff indicates that he signed the transfers from Oatess Motors to Everglades Leasing. He signed the name of Mr. Shirks of Everglades Leasing to the transfer. The whole thing was invalid to start with and then it was followed by Mr. Oatess' statement to the Florida authorities he had a good title to the vehicle. We hold that the title to the vehicles never actually passed. The plaintiff's case shows the vehicles' titles never

passed to Everglades Leasing and, therefore, there was nothing upon which they could base an application for a certificate of title to the Florida vehicle authorities.

I'm not going to say anything more with respect to the negligence or lack of negligence of the two banks involved here. The evidence shows that at various times a little investigation on their part would have disclosed the true situation that existed here. The Southeast Bank apparently relied solely on the fact that they had the titles to the vehicle without any further inquiry as to how Everglades got the titles and what right they had to apply for the titles and put security agreements, financing statements upon them and this despite the fact that the Southeast Bank knew that these vehicles came from Erie and that it had been subject to floor plan with Oatess Motors which was operated by Security-Peoples Trust Company. There are other matters here but I don't believe it is necessary to go into them for the purpose of what I'm saying now and I also am not necessarily deciding this on constitutional questions although there would be a grave constitutional question which might arise if States everywhere purported to issue certificates of title on vehicles which were never within their jurisdiction as required by the Uniform Commercial Code. I gave the illustration of the man who goes to the Alaska Commission of Motor Vehicles and by some hoodwinking process induces them to issue a certificate of title with the serial number of a vehicle located in Erie, Pennsylvania owned by somebody else and then comes down here and tries to recover the car. I think the very absurdity of the thing on its face shows what I'm talking about. To permit the Alaska title to supersede the Pennsylvania title under those circumstances would be a complete lack of due process of the law but I'm not basing this decision on that at all. I'm basing it upon the fact that while Southeast First National Bank on the face of things had prima facie title and security interest in these vehicles, nevertheless, the plaintiff's own case discloses that Florida had no jurisdiction to issue these certificates of title and, therefore, plaintiff's case based upon these security titles and security interests in Florida must fail insofar as it's an attempt to collect proceeds of these cars from Security-Peoples Trust Company here in Pennsylvania.

Now there has been much time spent on the question of estoppel in this case and if the elements of estoppel had been made out, I certainly would not interrupt the case at this point but proceed to hold a full hearing on the matter but as the Court interprets the Pennsylvania decisions particularly the case of Speck Cadillac Olds heretofore referred to, estoppel in the motor vehicle field to claim that somebody else's title is no good only arises where the original owner of the car delivers possession and . furnishes the indicia of title to the wrongdoer or whomever is now claiming under the title. In this particular case, there is no evidence that Security-Peoples Trust Company ever furnished any indicia of title to the Southeast First National Bank of Florida or to anyone else nor did they deliver possession of these vehicles to them. The clothing of another person with false indications of title on which somebody relies to his detriment is the furnishing of the elements of estoppel which operate in the motor vehicle field and the Court is unable to find any such elements here. There's indication that Security-Peoples was negligent in handling these matters; that they perhaps should have been alerted by the large number of duplicate manufacturing statements of origin or MSOs as we have been using the phrase, the abbreviation in this case. They perhaps should have looked into it. There's evidence that Mr. Britton was also an officer of Everglades but there's no evidence that he knew as an officer as director of Security Peoples and chairman of his executive committee that these vehicles were being used by Everglades for this purpose and I don't think in this field here any imputation of knowledge constructively by his connection with Ever-

glades Leasing would be attributable to Security-Peoples Trust Company. The elements of estoppel in this case involved doing something which clothes another person with the appearance of being the owner of the vehicle. I can find nothing more than mere negligence operating in this area and so under the Pennsylvania law, the elements of estoppel which would set aside an otherwise valid certificate of title and estop Security from claiming these vehicles do not apply.

The defendant Security-Peoples has presented to the Court certain suggested findings of fact. I will affirm some of them and others I don't think it necessary to resolve at this time. I will affirm suggested findings 1, 2, 3 with the modification that it should read, "None of the vehicles involved in this case save one were ever transported to the State of Florida and hence they were never in the State of Florida and 4, the same modification should occur there that none of the vehicles involved in this case save one came into possession of Everglades Leasing Company. 5 and 6 will be affirmed. There's no finding on 7. 8 and 9 will be affirmed. 10 will be affirmed without the last sentence where it's inserted the number of vehicles is 47. 12 will be affirmed. 13 thru 18 no findings are made with respect to those matters. 19 will be affirmed. 20 will be affirmed. 21 will be affirmed. 22 no finding. 23 will be affirmed and 24 and 25 and 26 are refused. 27 is affirmed. 28, 29, 30, 31 no findings. 32 is affirmed with the modification so that it should read, "At no time was Security-Peoples Company aware that duplicate MSOs or original MSOs were being used for the purpose of procuring certificates of title in two separate States nor did Security-Peoples clothe Everglades with the indicia of title." 33 will be affirmed. 34 will be affirmed. 35 will be affirmed. 36 will be affirmed. 37 will be affirmed with a modification to read, "John Britton had no actual knowledge whatsoever of the fraud being perpetrated by Pete Oatess. Any imputed knowledge is insufficient to base a finding

of estoppel with respect to this matter. 38, 39 no findings will be made with respect to those matters. 40, 41, 42 will be affirmed. 43 will be affirmed with a modification, "There is not sufficient evidence in this record to permit plaintiff to trace the proceeds from the sale of vehicles which was sold prior to March 4th, 1976 into Security-Peoples hence plaintiff has no security interest in any such proceeds with the modification of save as to certain vehicles found on Oatess' lots in Erie." This, however, is regarded as a matter of damage and not pertinent at this time for the Court's resolution of the matter and 44 will be affirmed.

An appropriate order will be entered, gentlemen, later in the day and this matter we'll be entering judgment for the defendant Security-Peoples Trust Company in Civil Action 76–35 Erie.

### APPENDIX B

1. All vehicles claimed by plaintiff in this case were delivered by Ford Motor Company to Oatess Motors at the latter's place of business in Erie, Pennsylvania.

2. All such vehicles remained on the Oatess Motors lot in Erie, Pennsylvania until such time as they were:

(a) sold in the ordinary course of Oatess Motors business to customers in the Erie area; or

(b) seized by Security Peoples Trust Company on March 4, 1976 and thereafter disposed of by Security Peoples Trust Co. as a creditor and mortgagee in possession.

3. None of the vehicles involved in this case save one were ever transported to the State of Florida and hence they were never in the State of Florida.

4. None of the vehicles involved in this case save one ever came into the possession of Everglades Leasing and Finance Company (hereinafter "Everglades") either in Florida or elsewhere.

5. Oatess Motors and Everglades were corporations both of which were controlled by Walter "Pete" Oatess.

6. Papers purporting to represent bills of sale were made out indicating an alleged sale of individual vehicles from Oatess Motors to Everglades.

10. Many vehicles involved in this case were actually sold and delivered to customers in Erie, Pa. prior to the time a Florida title was applied for.

12. The purported sales to Everglades were not completed in good faith—good faith being defined as honesty in fact.

19. Plaintiff never conducted a physical verification audit thereafter simply because it never insisted on its right to do so.

20. The Security Agreement between plaintiff and Everglades specifically gave plaintiff the right to enter upon the premises of Everglades to conduct such a physical verification audit and further gave the plaintiff the right to inspect the books and records of Everglades. Despite this contractual provision, the plaintiff never enforced its rights.

21. Oatess' reason for refusing to allow the audit to be performed was not a reasonable one and plaintiff was negligent in refusing or failing to conduct such an audit.

23. Despite Oatess' refusal to permit the audits and his failure, after January, 1975, to deliver monthly financial statements to the plaintiff as demanded by the plaintiff in January, 1975, plaintiff continued to loan more money to Everglades and plaintiff continued to extend the maturity dates of various Everglades loans as they became due. The last extension of credit on additional motor vehicles was in November 1975. The maturity dates on the loans for various vehicles were extended in April, June and October, 1975.

27. The plaintiff was advised in June of 1974 by the Florida Division of Motor Vehicles that Everglades had used duplicate MSO's to procure Florida titles. Plaintiff did nothing about this other than to procure from Pete Oatess an Affidavit to the effect that the original MSO had been lost. Plaintiff did not obtain an Affidavit from Pete Oatess that the original MSO had not been used to title a car in another jurisdiction even though such an affidavit was required by the Florida Division of Motor Vehicles.

32. At no time was Security Peoples Trust Company aware that duplicate MSO's or original MSO's were being used for the purpose of procuring Certificates of Title in two separate states nor did Security Peoples clothe Everglades with the indicia of title.

33. There is no evidence that Security Peoples ever misled the plaintiff by any misrepresentation or misstatement.

34. There is no evidence that plaintiff ever took any action or failed to take any action, to its detriment, based on its reliance on any statement or representation or silence of any agent, officer or employee of Security Peoples.

35. There is no evidence that any officer, director, employee or agent of Security Peoples knew or should have known that Oatess, Oatess Motors or Everglades were perpetrating a fraud by using fictitious Florida titles as collateral for loans from the plaintiff and other Florida lending institutions.

36. No officer, director, agent or employee of Security Peoples had notice of facts sufficient to put them or it on notice that motor vehicles were being sold on paper by Oatess Motors to Everglades while being physically retained in Erie for sale to retail customers.

37. John Britton had no actual knowledge whatsoever of the fraud being perpetrated by Pete Oatess.

40. Security Peoples at no time, either by its agreement or otherwise, authorized the fictitious sale of vehicles to Everglades with the physical possession to be retained by Oatess Motors in Erie.

41. At all relevant times the plaintiff knew that Security Peoples did in fact loan money to Oatess Motors to cover its floor plan inventory and knew that Security Peo-

**1352**

ples had a security interest in the new car inventory of Oatess Motors.

42. There is no evidence in this record that indicates that the proceeds received by either Oatess Motors or Everglades from the sale of the vehicles which are the subject of this suit were paid over to Security Peoples except for those vehicles sold after March 4, 1976, by Security Peoples itself.

43. There is not sufficient evidence in this record to permit plaintiff to trace the proceeds from the sale of the vehicles which were sold prior to March 4, 1976 into Security Peoples Trust. Hence, plaintiff has no security interest in any such proceeds with the modification save as to certain vehicles found in Oatess' lots in Erie.

44. Plaintiff has no perfected security interest in the motor vehicles which were on the Oatess Motors lot as of March 4, 1976.