## Household Finance Corporation v. McFarland

*Bernard J. Rabik*, for plaintiff.
*John C. Reed*, for claimants.

ACKER, *PJ.*, September 4, 1987—We have for consideration the objections of Household Finance Corporation to a sheriff's determination of title to a mobile home in favor of Mark Bush, a property claimant in a sheriff's execution.

The relevant facts of the case were stipulated to and are as follows. In approximately October 1983, Phillip A. McFarland purchased a 1975 Mark IV mobile home. He financed the purchase price with the Northside Deposit Bank located in Mars, Pa.

On November 2, 1983, the Pennsylvania Department of Transportation issued a certificate of title showing the mobile home as being titled in the name of McFarland with a first lien in favor of the Northside Deposit Bank.[1] The bank received the certificate of title from PennDOT and has held it since that time as security for the repayment of the loan.[2]

On September 9, 1985, McFarland and Bush entered into an article of agreement regarding the sale of the mobile home to Bush. Pursuant to the terms of the agreement, Bush paid McFarland $1,200 as a down payment and assumed the outstanding indebtedness to the bank. Bush has made all of the installment payments to the bank from that day until the present day, the loan balance being $925.94 at present. Bush assumed possession of the mobile home on approximately September 10, 1985, and has continued to reside in the mobile home to the present time.

McFarland and his wife, Majorie, obtained a loan from Household Finance upon which they later defaulted. Household Finance subsequently obtained information from PennDOT which indicated that McFarland was the record owner of the mobile home. Household Finance had the prothonotary issue a writ of execution at no. 28 E.D. 1987 directing the sheriff to levy upon the mobile home.

The levy occurred on May 26, 1987. Bush was served with a copy of the writ of execution. Bush

---

1. The stipulation of facts lists October 2, 1983 as the date the certificate of title was issued.

2. The parties agree that Northside Deposit Bank will eventually be paid in full regardless of the ultimate outcome of this case because the bank has a perfected first lien on the mobile home.

then filed a sheriff's interpleader pursuant to Pa.R.C.P. 3202 and 3258.

On June 5, 1987, the sheriff made a determination of title to the mobile home in favor of the claimant Bush. Household Finance then filed on June 12, 1987, the instant objections to the sheriff's determination of title.

The issue involved here is whether McFarland had legal ownership of the mobile home on May 26, 1987, so that Household Finance could levy upon the mobile home and sell it at sheriff's sale.[3] Household Finance contends that McFarland had retained legal title to the mobile home under section 1004 of the Mobile Home Titling Act, July 25, 1977, P.L. 95, §2, 68 P.S. 1001 et. seq., which governs this case and asserts title to the mobile home under its provisions.

The resolution of this issue requires statutory interpretation of section 1004 of the Mobile Home Titling Act, which provides:

"Every owner of a mobile home which is in this commonwealth and for which no certificate of title or ownership has been issued by the department or any public or private agency shall make application to the department for a certificate of title or ownership. No mobile home may be sold or otherwise have the ownership thereof transferred without the proper transfer of the certificate of title."

Household Finance contends that this provision must be strictly construed. When so read, the statute would mandate that legal title to a mobile home cannot be transferred without submitting the certificate of title to PennDOT.[4] Household Finance as-

---

3. There is no dispute that Bush has equitable title to the mobile home.

4. "Certificate of title or ownership" is defined in section 1003 of the act as "[t]he instrument issued pursuant to this act

serts that the certificate of title was not so transferred and, as a result, McFarland retained legal title to the mobile home, subject only to the Northside Deposit Bank's perfected security interest. Therefore, Household Finance asserts that McFarland had a legal interest in the mobile home upon which it could levy and execute. We disagree.

Section 1002 of the Mobile Home Titling Act sets forth the legislative history and rationale for enacting the statute. This section makes it clear that the purpose of the act was essentially to permit perfection of security interests in mobile homes in order to encourage their financing. This purpose is perhaps reflected best by subsection (a) and (f), which provide:

"(a) To facilitate the proper financing of mobile homes in the commonwealth of Pennsylvania and the perfecting of security interests in connection therewith, there is a need for a certificate of title or ownership.

"(f) It is, therefore, in the best interest of manufacturers, dealers and purchasers of mobile homes, and of lenders of moneys to purchasers of mobile homes, that the commonwealth establish or otherwise continue to maintain a system of recording information relative to a certificate of title or ownership for mobile homes so that security interests may be perfected by notation thereon."

Viewed in this light, section 1004 cannot be read so as to require that the certificate of title be transferred before legal title to the mobile home may transfer. Rather, we conclude, as did the court in

that evidences the legal ownership of a mobile home, with any other information the department requires to identify the mobile home, including the amount, description and holder of any security interest in the mobile home."

*Bozzo v. Key Mobile Homes Inc.*, 8 D.&C.3d, 507, 512 (1978), that, "The Mobile Home Titling Act merely provides for titling of mobile homes and the availability, therefore, of establishing a security interest therein."[5]

We believe this interpretation is in accordance with the cases dealing with titles to motor vehicles which hold that a certificate of title is not conclusive evidence of ownership, but is merely evidence to be considered in determining ownership. See *Summers Estate*, 424 Pa. 195, 226 A.2d 197 (1967); *Speck Cadillac-Olds Inc. v. Goodman*, 373 Pa. 83, 95 A.2d 191 (1953); *Petition of Hennessy*, 343 Pa. Super. 293, 494 A.2d 853 (1985); *Southeast First National Bank of Miami v. Security Peoples Trust Co.*, 480 F. Supp. 1345 (W.D. Pa., 1979).

We turn now to claimant Bush's contention that the Uniform Commercial Code governs this case and provided him with title to the mobile home.

Bush contends that sections 2401(1), 2402(a), and 2403(a) of the U.C.C. should govern this case because there is no inconsistency between the Mobile Home Titling Act and the U.C.C. He asserts that the certificate of title is not conclusive evidence of ownership. Rather, he asserts that under the above provisions of the U.C.C., the legal title to the mobile home passed to him when the article of agreement was executed and the mobile home delivered unto him. Bush contends, therefore, that McFarland had no interest in the mobile home on

5. We recognize that *Bozzo v. Key Mobile Homes Inc.*, supra, is factually distinguishable in that it involved a buyer in the ordinary course of business under section 9307 of the Uniform Commercial Code. However, that court's approach presented by an apparent conflict between the Mobile Home Titling Act and the U.C.C. is similar to the approach we have taken.

May 26, 1987, upon which Household Finance could levy. We agree.

There is no dispute that a mobile home can be considered "goods" under the U.C.C. See *Cardwell v. International Housing Inc.*, 282 Pa. Super. 498, 423 A.2d 355 (1980); *Duffee v. Judson*, 251 Pa. Super. 406, 380 A.2d 843 (1977). See also, 4 ALR 4th 912, §16. Rather, the dispute centers upon the applicability of section 2401 of the U.C.C. to the instant case.

As previously stated, the purpose of the Mobile Home Titling Act was to encourage the financing of mobile homes by permitting the perfection of security interests therein. Section 2401 of the U.C.C. contemplates such security interests and specifically provides for the passing of or reservation of title to goods. We note that nothing in the Mobile Home Titling Act "indicates a specific provision or a legislative intent to abrogate, repeal or supercede any of the provisions of the Uniform Commercial Code. . . ." *Bozzo v. Key Mobile Homes Inc.*, supra at 512. We conclude that there is no inconsistency or conflict between the Mobile Home Titling Act and the provisions of the U.C.C. being asserted here, particularly section 2401. Therefore, those provisions of the U.C.C. are applied to this case.

Section 2401 of the U.C.C. provides in relevant part that:

"(3) Delivery without moving goods — Unless otherwise explicitly agreed where delivery is to be made without moving the goods:

"(i) if the seller is to deliver a document of title, title passes at the time when and the place where he delivers such documents; or

"(ii) if the goods are at the time of contracting already identified and no documents are to be delivered, title passes at the time and place of

contracting."

Subsection (3)(ii) is applicable to the instant case. The mobile home was identified to the contract. No "documents of title" were to be delivered to Bush.[6] The only document to be delivered is the certificate of title and Household Finance has conceded that the certificate of title does not fit the definition of a document of title. Applying this subsection, we conclude that legal title to the mobile home passed to Bush at the time he and McFarland executed the article of agreement.

Household Finance suggests that the article of agreement was merely a "conditional contract for sale" which provided for the transfer of title only after the end of the loan contract at the Northside Deposit Bank. Thus, Household Finance contends that there never was, nor ever could be, any transfer of title until the bank loan is satisfied. Such a contention ignores the impact of section 2401(a) which states:

"Any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest. Subject to these provisions and to the provisions of division 9 (relating to secured transactions), title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties."

As a result of this provision, the language of conditional sales contracts has repeatedly been held not to reserve title until the conditions are fulfilled, but to merely reserve the seller a security interest in the transferred property. See *Brandywine Lanes Inc. v. Pittsburgh National Bank*, 437 Pa. 499, 264 A.2d 377 (1970); *Commonwealth v. Jett*, 230 Pa. Super.

---

6. "Document of title" is defined in 13 Pa.C.S. §1201.

373, 326 A.2d 508 (1974); *Toyota Industrial Trucks U.S.A. Inc. v. Citizens National Bank of Evans City*, 611 F.2d 465 (3d Cir., 1979). Thus, we conclude that McFarland reserved only a security interest in the mobile home under the article of agreement. Title passed to Bush when the article was executed.

The determination of exactly what Bush so received is governed by section 2403(a) of the U.C.C. That subsection provides, inter alia, that a purchaser of goods acquires all title which his transferor had or had power to transfer, Thus, Bush obtained legal title to the mobile home, subject to the Northside Deposit Bank's perfected security interest.

Finally, Household Finance asserts that Bush's claim should be denied as a matter of policy because "[t]he envisioned goal of encouraging financing of mobile homes through the act would be rendered a nullity and the act a worthless piece of legislation" if he is found to be the owner of the mobile home. We disagree.

The Mobile Home Titling Act's purpose was to encourage financing of mobile homes by permitting the perfection of security interests therein. Thus, lenders would be encouraged to provide purchase money security for mobile homes or otherwise consider mobile homes as collateral for loans. See 13 Pa.C.S. §1002(e). No such lender is involved in the instant dispute. Household Finance neither provided the purchase money for the mobile home nor had the mobile home pledged as collateral for a loan. Rather, Household Finance is the unsecured creditor on a loan to McFarland completely unrelated to the mobile home in question. Under the facts of this case, no violation of the act's purpose will be done by a finding that Bush is the owner of the mobile home. Nor will the act be rendered null and worth-

less. Lenders involved in transactions regarding mobile homes must still have their security interests recorded on the certificate of title to be perfected security interests.

Accordingly, the sheriff's determination of title is affirmed and ownership of the aforesaid mobile home is declared to be in Mark Bush. The objections of Household Finance to that determination of title are denied.

## ORDER

And now, this September 4, 1987, it is hereby ordered and decreed that the objections to sheriff's determination of ownership of property are dismissed.